## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 17-cr-10120-ADB |
| | ) | |
| JONATHAN R. ACE, | ) | |
| Defendant. | ) | |

### DEFENDANT'S SENTENCING MEMORANDUM
### AND REQUEST FOR NON-GUIDELINE SENTENCE

The Defendant, Jonathan R. Ace ("Ace"), submits this memorandum in support of his request for a non-Guideline sentence of fifteen months imprisonment followed by two years of supervised release. Ace also requests that the Court waive all fines.

### I.        Sentencing Framework

A sentencing court's approach to sentencing is well-established and, therefore, only briefly outlined here. Following *United States v. Booker*, 543 U.S. 220 (2005), the United States Sentencing Guidelines are no longer mandatory but, rather, advisory. The Guidelines are but one of the factors to consider in crafting an appropriate sentence. Sentences should be crafted with the primary sentencing mandate of 18 U.S.C. § 3553(a) in mind, which states that courts must impose the minimally-sufficient sentence to achieve the statutory purposes of punishment – justice, deterrence, incapacitation, and rehabilitation. That is:

> The court shall impose a sentence *sufficient, but not greater than necessary,* to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)].

18 U.S.C. § 3553(a)(emphasis added). The Court should "consider every convicted person as an individual and every case as an unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38,

52 (2007).

After calculating the guidelines sentencing range, the sentencing court must next consider the factors delineated in 18 U.S.C. § 3553(a) in determining what sentence is appropriate in a particular case.  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences of available; (4) any relevant policy statement issued by the Sentencing Commission; (5) the need to avoid unwarranted sentencing disparity; and (6) the need to provide restitution.  18 U.S.C. § 3553(a); *Gall*, 552 U.S. at 50 n.6.

The § 3553 factors, however, should not be viewed as a limitation on a sentencing judge's ability to consider facts and circumstances that do not fit neatly into the enumerated factors.  Ultimately, a sentencing court may consider any circumstance that bears on the overarching principle that courts should craft sentences that are "sufficient, but not greater than necessary."

## II.      Guidelines Calculations and Objections

Ace states that the advisory Guideline Total Offense Level is 21, not 23 as stated in the Presentence Report ("PSR").  Ace agrees with the PSR that the base offense level for this offense is 7 and that the loss amount attributable to Ace is $1,835,000 with a corresponding increase of 16 levels.[1]  Ace objects, however, to the two-level enhancement under §2B1.1(b)(9)(A) for and offense involving a defendant's misrepresentation that he was working on behalf of a charitable organization.  (PSR ¶121.)

The PSR states that this enhancement is based on an unsubstantiated allegation that Ace informed Menefee that he was using part of his kickback money to build houses for families

---

[1] The loss amount here represents the money that flowed from Bank of America to various charities.  This figure does not represent the amount Ace received in the form of kickbacks.

affected by AIDS/HIV.  First, Ace never made any such representation.  In a case that is littered

with a paper trail of emails and text messages, not a single communication has been produced

where Ace has made such a claim.  Menefee has always claimed that Ace continued to ask for a

larger kickback in exchange for Ace continuing to be a facilitator for the Bank of America

donations to Menefee's foundation.  Ace and Menefee were involved in an intimate relationship,

spanning roughly three-and-a-half years, during which she gave Ace joint authority over one of

her charity's accounts.  There is nothing in the record that would support Menefee's contention

that she was an unwitting participant or a victim of fraud.

Second, even assuming, *arguendo*, that Ace did make such a representation, as a practical

matter, an enhancement under §2B1.1(b)(9)(A) is not applicable on these facts.  The kickbacks to

Ace were not part of the offense.  They occurred after the offense was completed.  The offense

related to defrauding Bank of America, not Menefee.  Ace did not represent, nor do the facts

allege, that he was acting on behalf of a charitable organization.

The reason Menefee paid Ace a fee was to continue the flow of money from Bank of

America into her foundation.  That was the purpose of her payments on every occasion she made

them.  Menefee alleged, without any corroboration, was that on a single occasion Ace told her

that he was building homes for families affected by HIV/AIDS.  Menefee made payments to Ace

on several other occasions and there was no claim that she motivated by any reason other than to

continue the flow of payments to her foundation.  There is no reason to believe that she was

influenced by any alleged misrepresentations made by Ace.  Where the basis of the enhancement

is an allegation of a single, unsubstantiated remark, the government has not met its burden for the

application of this enhancement.

For the foregoing reasons, Ace submits that no enhancement for misrepresentation should

be applied.  As such, with acceptance of responsibility, the resulting total offense level (including acceptance of responsibility) should be Level 21.  Under Criminal History I, the advisory Guideline range is 37 to 46 months.

### III.    Request for Downward Departure

Application of the one level enhancement under U.S.S.G. §2BS1.1(b)(2)(A) for defendant's conviction for money laundering under 18 U.S.C. §1957 takes this case out of the "heartland" of money laundering offenses. See *United States v. Sidhom,* 142 F.Supp.2d 150 (D.MA. 2001); *Koon v. United States*, 518 U.S. 81 (1991).  This case, however, was not predicated on money laundering.  Indeed, the first versions of the PSR calculated the Guidelines as a straight fraud case under Section 2B1.1.  The §1957 offense is based solely on a single wire transaction in the amount of $17,500 that Menefee initiated to purchase a motorcycle for Ace. The enhancement is solely the result of the way the government chose to indict the offense, but adds nothing to the real conduct as already measured by the fraud guideline.  For these reasons, Ace requests that the Court depart downward one level to offset this result.

### IV.    Section 3553(a) Factors

Ace states that, upon consideration of the factors set forth in 18 U.S.C. §3553(a), a non-Guideline sentence of fifteen months is sufficient, but not greater than necessary to accomplish the goals of sentencing.[2]

---

[2] The purpose of sentencing is to:

(A) to reflect the seriousness of the offense, to promote respect for the law, and
to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training,
medical care, or other correctional treatment in the most effective manner;

18 USCS § 3553(a)(2).

### A.  *Nature and Circumstances of the Offense*

While the Guidelines are a starting point in every sentencing determination, "courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (internal quotations omitted).  With respect to the fraud guidelines, several courts have questioned the over-reliance on loss in determining an appropriate sentence.

For example, in *United States v. Prosperi*, 686 F.3d 32 (1st Cir. 2012), the First Circuit affirmed a sentence of six months home confinement where the Guidelines range was 87 to 108 months.  Id. at 34.  There, the defendants were employed by a subcontractor of Boston's Central Artery/Tunnel project, more commonly referred to as the "Big Dig".  *Id.* at 34.  The defendants were convicted of falsifying documents concerning the quality of concrete used in that project. Id.  The district court found that loss amount was "an unfair proxy for culpability."  *Id.* at 44. The Court approved of the sentencing judge's consideration of the specifics of the case and the defendant's conduct instead of relying on the loss calculation.  *Id.*

In *United States v. Algahaim*, 842 F.3d 796 (2d Cir. 2016), the Second Circuit noted the low base offense level (Level 6 in that case) that the Sentencing Commission chose as a starting point for these types of offenses.  "Where the Commission has assigned a rather low base offense level to a crime and then increased it significantly by a loss enhancement, that combination of circumstances entitles a sentencing judge to consider a non-Guidelines sentence."  *Id.* at 800. The Court remarked that the approach of using loss to increase a sentencing range was "unknown to other sentencing systems" and was an appropriate consideration for a sentencing court to consider in determining an appropriate sentence.  *Id.*  The Court remanded for resentencing so that the district court could "consider whether the significant effect of the loss enhancement, in

relation to the low base offense level, should result in a non-Guidelines sentence." *Id.*

Commentators have similarly questioned the wisdom behind the Guidelines' approach to economic crimes, which as one commentator has observed, "relies too heavily on the ambiguous concept of 'loss'." Alan Ellis, John R. Steer, and Mark H. Allenbaugh, *At a "Loss" for Justice: Federal Sentencing for Economic Offenses*, in 25 Criminal Justice 34, 35 (ABA Winter 2011). The factors the fraud guidelines do not adequately consider are, among other things, "the extent to which the offender did or did not personally profit from the offense…." *Id.* at 37.

The nature and circumstances of this case presents a good example of why the Guidelines loss calculation is not a good proxy for culpability. Although the total loss amount in this case was $1,835,000, that figure does not represent the amount that Ace personally profited from this offense. Rather, as the PSR details, the amount that Ace received from the non-profit companies was about $226,525. A summary of those specific amounts is detailed below:

| Date | Charity | Kickback Amount | Citation |
|------|---------|-----------------|----------|
| December 2010 | Young Girlz & Boyz | $5,000 | PSR ¶105 |
| December 7, 2010 | Young Girlz & Boyz | $6,875 | PSR ¶107 |
| December 9, 2010 | Young Girlz & Boyz | $15,100 | PSR ¶107 |
| April 15, 2011 | Young Girlz & Boyz | $13,125 | PSR ¶107 |
| April 15, 2011 | Young Girlz & Boyz | $8,750 | PSR ¶107 |
| July 19, 2011 | Young Girlz & Boyz | $8,500 | PSR ¶107 |
| July 19, 2011 | Young Girlz & Boyz | $6,000 | PSR ¶107 |
| July 20, 2011 | Young Girlz & Boyz | $8,000 | PSR ¶107 |
| September 27, 2011 | BABC | $9,000 | PSR ¶32 |
| November 28, 2011 | SMTWF | $2,000 | PSR ¶77 |

| November 29, 2011 | SMTWF | $9,000 | PSR ¶77 |
|---|---|---|---|
| December 7, 2012 | Young Girlz & Boyz | $9,375 | PSR ¶107 |
| December 7, 2012 | Young Girlz & Boyz | $6,250 | PSR ¶107 |
| March 29, 2012 | Young Girlz & Boyz | $9,000 | PSR ¶107 |
| March 29, 2012 | Young Girlz & Boyz | $7,000 | PSR ¶107 |
| May 9, 2012 | SMTWF | $7,500 | PSR ¶82 |
| May 9, 2012 | SMTWF | $17,500 | PSR ¶82 |
| June 26, 2012 | Young Girlz & Boyz | $6,050 | PSR ¶107 |
| June 27, 2012 | Young Girlz & Boyz | $5,000 | PSR ¶107 |
| June 28, 2012 | Young Girlz & Boyz | $6,000 | PSR ¶107 |
| September 27, 2012 | SMTWF | $5,000 | PSR ¶84 |
| September 28, 2012 | SMTWF | $5,000 | PSR ¶84 |
| October 1, 2012 | SMTWF | $5,000 | PSR ¶84 |
| November 7, 2012 | BABC | $5,000 | PSR ¶33 |
| November 29, 2012 | BABC | $12,000 | PSR ¶33 |
| January 25, 2013 | SMTWF | $7,500 | PSR ¶91 |
| January 30, 2013 | SMTWF | $7,500 | PSR ¶91 |
| January 28, 2014 | SMTWF | $7,000 | PSR ¶95 |
| September 22, 2014 | SMTWF | $7,500 | PSR ¶95 |
| **TOTAL** | | **$226,525** | |

The above table demonstrates why loss amount is not always the best way to measure an

appropriate Guidelines sentence.  What Ace personally profited from his conduct is demonstrably

lower than what the Guidelines loss enhancement considers.  A loss amount based on a profit of $226,525 would result in a 10-level loss enhancement under U.S.S.G. § 2B1.1(b)(1)(F). The total adjusted Guideline offense level under Section 2S1.1, including acceptance of responsibility, would result in a pre-departure Level of 15.[3]  The Guidelines range for Level 15, Criminal History I is 18-24 months.  With the one level departure requested above, the Guidelines range would be 15-21 months.

In short, where the fraud guidelines rely on the unusual approach of using loss to drive up sentencing ranges, this Court is free to exercise its discretion in determining an appropriate sentence.  Under these circumstances, a non-Guidelines sentence is appropriate.

### B.  Ace's History and Characteristics

Ace is 47 years old.  He was raised in a two parent, working class family with his two older brothers.  The family remains close-knit and supportive of Ace.  (**Exhibit A**, Letter from Marie Ace.)

Ace and his wife Palestine "Pam" (a co-defendant in this matter) were married in 2009. They live together on the South Shore with their six-year-old daughter.  The couple's primary concern right now is ensuring that their daughter benefits from a safe and nurturing upbringing, notwithstanding the difficulties posed by this case.  Although it is early in the education process, their daughter is currently an honor roll student.  It is their hope that their daughter will have the continuity of at least one of her parents at home during these formative years.

In addition to their six-year-old daughter, Ace and Pam have been actively involved in raising Ace's son from a previous relationship, Jon, Jr., since he was a year old.  Jon, Jr. is now

---

[3] Under Section 2B1.1, the total offense level would be 17.  An additional one level increase for a conviction under 18 U.S.C. § 1957 is applied pursuant to U.S.S.G. § 2S1.1(b)(2)(A), resulting in a total offense level of 18.

twenty-one years old.  He attended the University of Massachusetts-Lowell on a full academic

scholarship.  This past May, John, Jr. graduated with honors and a 3.8 GPA.  Jon, Jr.

acknowledges the active role that Ace played in raising him to be a successful young man with a

bright future.  Whether it was offering advice, support and encouragement, or simply expressing

to Jon, Jr. his love, Ace has had an active and positive impact on his son's life.  (**Exhibit B**,

Letter from Jonathan Ace Knight.)

Jennifer Knight, who is Jon Jr.'s mother, has maintained a close friendship with Ace since

college. (**Exhibit C**, Letter from Jennifer Knight.)  This close friendship, even after their dating

relationship ended, was instrumental in raising Jon, Jr. in an environment that allowed him to

develop into the young man he is today.  It speaks volumes that Ms. Knight continues to be an

ardent supporter of Ace.  They did not remain a couple but they remained close friends.  Ace

continues to help Ms. Knight whenever a need arises, as he has always done.  As she describes

him, "Jonathan is a loving dad, and a kind and caring friend and human being."  (Ex. C.)

Although she is disappointed in his conduct in this case, she "know[s] he's better than that and so

does he." (Ex. C.)

Others that have written in support of Ace have similar reflections of a loyal and generous

friend.  (**Exhibit D**, Letters of Support.)  Ace is described as a man that "will sacrifice for others

at times when most would be selfish and self centered [sic]."  (**Exhibit E**, Letter from Matthew

N. Leaman.)  He is a man that will "nurse sick family members back to health, be a pillar of

strength during tragedy and death."  (Ex. E.)  Indeed, when Ace's mother was diagnosed with

breast cancer, Ace was the one taking his mother to her scheduled treatments and hospital visits.

Ace has also volunteered "for summer youth programs to play a 'big brother' counselor

type role" and "was always one of the few young kids that would initiate volunteering assisting

'the seniors' with tasks like crossing the street or carrying their groceries." (**Exhibit F**, Letter from Rob Pineyro.)  These letters of support consistently reflect that Ace is a man who has a lot attributes that have meaningfully impacted the people who know him best.  These attributes will help Ace succeed in the future.

Finally, the support from family and friends, coupled with the ability to maintain gainful employment, are good indicators that Ace will lead a productive, law-abiding life after serving his sentence.  Ace has already begun planning for his future.  Ace was a union carpenter from 2008 to 2017, during which he was employed full time.  Ace recently met the minimum requirements to enter into the Union's apprenticeship program.  (**Exhibit G**, Letter from New England Carpenter's Training Fund.)  Having met these requirements, Ace has two years to seek employment with a union contractor and begin an apprenticeship.   Ace, therefore, is well-positioned for a legitimate and substantial source of income once he completes his sentence.  A sentence of fifteen months will allow Ace to take advantage of this apprenticeship once he serves his sentence.

### C.  Ace's Medical Condition

Ace also has a medical condition that will require monitoring by the Bureau of Prisons. Doctors recently discovered several tumors on Ace's head, chest, back, and stomach. Ace has had the tumors on his body removed.  However, complications with the procedure to remove the tumors on his head have resulted in several delays to his surgery.  As of the filing of this sentencing memorandum, Ace has not had the tumors on his head removed.  Those tumors will have to be removed eventually.  Presumably, the recovery from a surgery on Ace's head will require special care.  Designation to the Camp at Fort Devens will provide Ace with access to the adjacent Federal Medical Center at Devens, if necessary.  This will provide Ace with care at a

higher level than he would receive at an institution that does not have a medical designation.

### D.  Supervised Release

Finally, Ace states that a two year term of supervised release is appropriate under the circumstances.  "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration."  *United States v. Johnson*, 529 U.S. 53, 59 (2000).  *See also United States v. Joseph*, 109 F.3d 34, 38-39 (1st Cir. 1997) ("supervised release is intended to facilitate the integration of the violator into the community, while providing the supervision designed to limit further criminal conduct.")(citations and quotations omitted).  Based on the foregoing, including Ace's qualification for the carpenter's apprentice program, a two year term is sufficient to accomplish these purposes.

## V.      Request for Judicial Recommendations

Finally, Ace requests that the Court make the following recommendation to the Bureau of Prisons:

### A.  Residential Drug Abuse Program

For the reasons set forth in the PSR, Ace requests the Court recommend participation in the BOP's 500 hour residential drug abuse prevention program.

### B.  Designation to Camp at Fort Devens

Ace requests that the Court include in the judgment a recommendation for designation to the Camp at Fort Devens.  Designation to the Camp at Fort Devens will permit Ace to maintain a relationship with his children while he is incarcerated, particularly his young daughter, who will likely have a difficult adjustment to any separation.  It will allow for more frequent visits by eliminating the logistical impediments posed by lengthy travel with a young child.  The type of contact that Ace can have at a camp will go a long way toward preserving this relationship to the

benefit of both the children and Ace.  It will also ease the transition once Ace returns to his family.

Moreover, as stated above, Ace has a medical condition that may require medical attention and follow up care.  The Camp at Fort Devens has an adjacent Federal Medical Center that can provide any follow up medical care that is required.  Accordingly, the Ace is requesting that the Court recommend to the BOP designation to the Camp at Fort Devens.

### C.  Self-surrender to institution

Ace requests that the Court permit voluntarily surrender to the institution to which the BOP designates him.  Ace has been released on an unsecured bond since his initial appearance. He has complied with all of his conditions of release.  Moreover, voluntary surrender will permit Ace to receive the lowest possible classification level, including a classification level that will permit designation to a BOP camp.  *See BOP Program Statement P5100.08*, Ch. 4, page 5 (2006) ("This item allows for the subtraction of three points from the Security Point Total, Item 15, when the Judgment indicates the inmate was allowed to voluntarily surrender.").

### CONCLUSION

For the foregoing reasons, Ace respectfully requests that the Court:

1. Impose a non-Guideline sentence of fifteen months imprisonment;

2. Two years of supervised release;

3. Waive all fines and interest;

4. Recommend to the BOP that Ace participate in the Residential Drug Abuse Program;

5. Recommend to the BOP that Ace be designated to the Camp at Fort Devens; and

6. Permit Ace to voluntarily surrender to the BOP facility of designation.

JONATHAN R. ACE
By his attorney,

/s/ Matthew D. Thompson
Matthew D. Thompson
BUTTERS BRAZILIAN LLP
699 Boylston Street, 12th Floor
Boston, Massachusetts 02116
(617) 367-2600
Dated: November 12, 2018                    thompson@buttersbrazilian.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the
registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies
will be sent to those indicated as non-registered participants on this date.

/s/ Matthew D. Thompson
Matthew D. Thompson